Original
No. 2002-181

PETITION OF WMUR CHANNEL 9 *& a.*

Argued: October 2, 2002
Opinion Issued: December 13, 2002

*Orr & Reno, P.A.*, of Concord (*James P. Bassett & a.* on the brief, and *Mr. Bassett* orally), for the petitioners.

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, associate attorney general, and *Michael A. Delaney*, senior assistant attorney general, on the brief, and *Ms. Ayotte* orally), for the State.

*Lucy Dalglish*, of Arlington, Virginia, and *Wiley Rein & Fielding, LLP*, of Washington, D.C. (*Kathleen A. Kirby* on the brief), for the Reporters Committee for Freedom of the Press and the Radio-Television News Directors Association, as *amici curiae*.

*Richard Guerriero*, of Concord, by brief and orally, for the New Hampshire Public Defender, as *amicus curiae*.

NADEAU, J. By petition for writ of certiorari, the petitioners, WMUR Channel 9, the Boston Globe and the New Hampshire Association of Broadcasters, request that the court reverse a Superior Court (*Smith*, J.) order prohibiting them from photographing, recording or broadcasting proceedings in *State of New Hampshire v. Robert Tulloch*. When the

defendant in that case decided to plead guilty, we granted the petitioners' emergency request for media access to the defendant's change of plea hearing, as that proceeding was not a jury trial but rather a hearing on a guilty plea to an offense that carries a mandatory sentence of life imprisonment without parole. We subsequently asked the parties to brief the important issues raised by the original petition because they are likely to arise again. We now grant the petition for certiorari as follows and establish guidelines for trial courts to follow when exercising their discretion to exclude cameras or other electronic media from the courtroom.

This case generated intense national publicity after two Vermont teenagers brutally robbed and murdered two distinguished Dartmouth College professors in their home in January 2001. From the outset, members of the broadcast and print media unsuccessfully sought electronic access to the pre-trial proceedings in this case. The trial judge, however, had an administrative policy prohibiting such access in courtrooms in which he presides in Grafton and Coos Counties. Consistent with this policy and pursuant to Superior Court Rule 78(a), the trial judge denied each of the petitioners' requests without a hearing. In the denials, the trial judge explained his reasons for the administrative policy and for his denial of each petitioner's request: the potential infringement of the defendant's constitutional right to a fair trial, the potential for trial participants to alter their conduct in a nationally televised proceeding, the potential for the trial to become a "media circus," and the perceived inadequacy of the Grafton County court facilities to accommodate the electronic media.

The petitioners challenge each of the trial court's rulings, as well as the constitutional validity of the administrative policy applied in Grafton and Coos Counties. The petitioners argue that the New Hampshire and United States Constitutions, and the State and federal common law, establish presumptive rights for the media to have cameras in the courtroom during all phases of trial, and any person seeking to prohibit access should bear the burden of proving otherwise. They conclude, therefore, that the administrative policy and the trial court's orders in this case are invalid. Finally, the petitioners ask us to establish guidelines for trial courts to apply when deciding whether the electronic media should be prohibited from the courtroom. The attorney general and the New Hampshire Public Defender agree with the trial court's administrative policy and closure order, arguing the press has no right, constitutional or otherwise, to have cameras in the courtroom. They further oppose any changes to the existing policy set forth in Superior Court Rule 78(a).

At the outset, we reject the petitioners' State and federal constitutional arguments because there is neither a constitutional prohibition against nor a constitutional presumption in favor of allowing cameras and electronic media in our courtrooms. *See Chandler v. Florida*, 449 U.S. 560, 583 (1981); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 610 (1978); *see also 1590 Broadcasting Corp. v. Pub. Lic. Util. Comm'n*, 113 N.H. 258, 260-61 (1973).

Our State Constitution gives the press a presumptive right of access to judicial proceedings and court records, limited, however, by the necessity that it be balanced against a criminal defendant's fundamental right to a fair trial. *See Keene Publishing Corp. v. Cheshire County Super. Ct.*, 119 N.H. 710, 711 (1979); *Keene Pub. Corp. v. Keene Dist. Ct.*, 117 N.H. 959, 961 (1977); N.H. CONST. pt. I, art. 15. In this case, the petitioners were given unrestricted access to be present, to gather information and to report upon the proceedings in *State v. Tulloch*; the only limitation the trial court imposed was its prohibition of cameras or other electronic media forms for dissemination of the information gathered. Such a limitation does not infringe upon the petitioners' constitutional rights of access or gathering news. *See* N.H. CONST. pt. I, art. 22. Likewise, allowing cameras or other electronic media into a courtroom would not automatically infringe upon a criminal defendant's right to a fair trial unless that defendant could show either actual or inherent prejudice from the electronic media presence. *See State v. Smart*, 136 N.H. 639, 654-59, *cert. denied*, 510 U.S. 917 (1993). Because the defendant did not proceed to trial in this case, we cannot address such a purely factual inquiry. We do, however, address the remainder of this petition under our authority over the practices and procedures of the trial court. *See State v. McGlew*, 139 N.H. 505, 508-09 (1995). While the concurrence would have us refrain from exercising our authority in this case, we do so to provide guidance on these important issues, which have been the subject of much national debate with divergent conclusions and the subject of many trial court orders with conflicting results. In the past, when dealing with troublesome issues arising out of trial court evidentiary rules and jury instructions we have noted that,

> "mindful of the uncertainties spawned by continued litigation, and aware of the importance of a smooth functioning criminal justice system, we exercise our supervisory authority over the trial courts of New Hampshire . . . [to] instruct those courts" on this troublesome issue.

*Id.* (evidentiary rule) (quoting *State v. Wentworth*, 118 N.H. 832, 838 (1978) (jury instruction)) (internal brackets and ellipses omitted).

Until we adopted Supreme Court Rule 19 and Superior Court Rule 78 in 1977, cameras were not permitted in New Hampshire courtrooms. With adoption of these rules, however, New Hampshire became one of the first States to permit cameras in any courtrooms on a permanent basis. *See Chandler v. Florida*, 449 U.S. at 565 n. 5; *see also* Annotation, *Media Coverage of Court Proceedings*, 14 A.L.R. 4TH 121, 127-28 (1982).

Supreme Court Rule 19 assumes cameras and electronic media will be allowed to record any oral appellate proceedings, with prior notice to the clerk of court and consent from the justices. In contrast, Superior Court Rule 78(a) assumes cameras will not be allowed in any courtroom unless they are specifically allowed by an order of the presiding justice. Rule 78 does, however, include guidelines for a presiding justice to follow if he or she does issue an order to allow cameras into the courtroom. The guidelines recognize that such a judicial decision is based upon the law and the exercise of discretion, which ultimately must ensure that the media neither distract trial participants nor detract from the integrity of the proceedings.

■ ■ While the superior court rule and its guidelines leave the final decision to allow cameras in the courtroom to each individual judge, they do not authorize administrative orders or policies automatically excluding cameras or imposing heavy burdens on the media to justify allowing cameras into a courtroom. In *Cotter v. Wright*, 145 N.H. 568, 570 (2000), we explained that the superior court cannot unilaterally amend its rules by administrative order. The administrative policy prohibiting electronic access in the Grafton and Coos County Superior Courts violates the guidelines promulgated for Superior Court Rule 78, and, therefore, we find it to be invalid. As a result, the trial court's orders based upon this administrative policy must be reversed.

In light of the ongoing debate about the propriety of allowing electronic media in the courtroom, the practical realities of technology in the twenty-first century and our common law presumption in favor of open judicial proceedings, we next consider whether Superior Court Rule 78(a) and its corresponding guidelines remain appropriate tools for trial courts to make such decisions.

Superior Court Rule 78(a) created a presumption against having cameras in the courtroom because, in the 1960s and 1970s, such technology was considered bulky and distracting, and detracted from the integrity of court proceedings. The rule required the press to overcome this presumption in each individual case. Advances in modern technology, however, have eliminated any basis for presuming that cameras are inherently intrusive. In fact, the increasingly sophisticated technology

available to the broadcast and print media today allows court proceedings to be photographed and recorded in a dignified, unobtrusive manner, which allows the presiding justice to fairly and impartially conduct court proceedings. Radio and television broadcasts are important ways by which citizens receive news. They are effective channels of news transmission because they can carry the unfiltered content of proceedings directly to the public.

Numerous States have conducted studies on the physical effects cameras and electronic media have on courtrooms, finding minimal, if any, physical disturbance to the trial process. *See Chandler*, 449 U.S. at 565 n. 6; *see also* Annotation, *Media Coverage of Court Proceedings, supra* §§ 7(a)-(c), at 139-47. Additionally, these States have found that the psychological effect of cameras in the courtroom on trial participants is no greater than when reporters wait outside on the courthouse steps with cameras. *See* Annotation, *Media Coverage of Court Proceedings, supra* §§ 7(a)-(c), at 139-47. Finally, these States have found that instances of prejudice may arise, but they are unique to each individual case and cannot be decided by a blanket rule. *See id.* In contrast, these studies have found that the advent of cameras in the courtroom improves public perceptions of the judiciary and its processes, improves the trial process for all participants, and educates the public about the judicial branch of government. *See id.*

Our own experiences, in reviewing electronic media coverage of highly-publicized trial proceedings such as *State v. Smart*, demonstrate that trial judges can maintain the decorum of highly-publicized trial proceedings and guarantee a defendant's right to a fair trial by working with the media to place guidelines on their coverage, instructing the jury on the nature of such media coverage and maintaining control of the courtroom. *See Smart*, 136 N.H. at 657.

We are mindful that there are potential risks in changing the presumption imposed by Superior Court Rule 78(a), but we find that such risks are hallmarks of our open government. Long ago we recognized that:

> [T]he issues of fair trial and free press do not in fact impose an irreconcilable division between the courts and the media. This is one of the promising consequences flowing from the dialogue of recent years. The challenge is to find approaches through which both can be accommodated fairly.
>
> In practical terms of day-to-day criminal law procedures and news reporting, this means developing acceptable patterns of practice to accomplish that result. It is a tripartite obligation of

the bar and courts, law enforcement agencies and the news media.

*Cheshire County Super. Ct.*, 119 N.H. at 712-13 (quotation omitted).

█ Given our historic common law presumption in favor of open judicial proceedings, we conclude that the use of cameras by the electronic media is merely an extension of the reporting function of the more traditional arms of the press. Allowing cameras in all courtrooms, with prior notice to the clerk and consent from the trial judge under standing orders, and restricting or prohibiting cameras only upon specific findings made *sua sponte* by the trial judge or upon a party's request to limit camera use in the courtroom, will ensure that a proper balance is maintained between maximizing technology use by the media and conducting a fair trial by the court. Such a practice also will provide greater consistency among the courts in this State at trials the public is entitled to attend and the media is entitled to cover. The practice is buttressed by the practical reality of the twenty-first century, which gives people instant access to information through all forms of electronic media.

With their initial requests for electronic coverage of the *Tulloch* proceedings, WMUR Channel 9 and the Court TV Network submitted their own internal guidelines, which are followed by their media representatives covering a case. These internal guidelines are lengthy and detailed, covering everything from manner of dress and presence in the courtroom to types of cameras used and information recorded. Both sets of internal guidelines are not only consistent with, but are even more stringent than the guidelines presently set forth in Rule 78. These guidelines, which are based upon the electronic technology being used by the news media today, present a measured and thoughtful response to judicial concerns.

█ We conclude that media access to judicial proceedings includes the technological advances applicable to the media profession. In the twenty-five years since we adopted Superior Court Rule 78, the common law has advanced to treat technology such as cameras as important in the reporting of public courtroom proceedings. To the extent that Superior Court Rule 78 conflicts with this reality, it is no longer valid.

█ A trial judge should permit the media to photograph, record and broadcast all courtroom proceedings that are open to the public. A judge may limit electronic media coverage if there is a substantial likelihood of harm to any person or other harmful consequence. Complete closure of trial proceedings to the electronic media, however, should occur only if four requirements are met: (1) closure advances an overriding interest

that is likely to be prejudiced; (2) the closure ordered is no broader than necessary to protect that interest; (3) the judge considers reasonable alternatives to closing the proceeding; and (4) the judge makes particularized findings to support the closure on the record. *See, e.g., Com. v. Clark*, 730 N.E.2d 872, 881 (Mass. 2000).

After conducting a hearing, a trial judge should make specific findings of fact to support any decision limiting or prohibiting such coverage. Fear of jurors being exposed to potentially prejudicial information or of witnesses being exposed to the testimony of other witnesses generally will not be a valid basis for denying electronic coverage. The trial court's findings should not be based upon speculation, but rather upon the specific facts of the case at hand. As we have recognized in the past, "the more reason there is in the decision to admit or exclude [electronic media from the courtroom], the more apt it is to be fair. Both bench and bar benefit at trial if critical questions . . . are exposed and reasons clearly stated." *McGlew*, 139 N.H. at 509 (brackets and quotation omitted).

We emphasize that this petition does not involve questions about media access to court proceedings; it questions only the extent to which the media can use their advancing technologies to provide better news coverage for New Hampshire citizens. The above procedures for allowing electronic media access, thus, are recommended to establish uniform standards consistent with both our longstanding practice of encouraging open judicial proceedings and our constitution's stringent protection of a criminal defendant's right to a fair trial.

■ In summary, to withstand appellate review, we recommend that future trial court orders restricting cameras or other electronic media from the courtroom be: (1) based upon clearly articulated findings of fact; (2) made after an evidentiary hearing at which all interested parties are given an opportunity to be heard; (3) drawn narrowly to address a particular problem posing a substantial likelihood of prejudicing the proceedings; and (4) imposed only when no other practical alternative is available. This opinion provides guidelines for trial courts to follow when addressing issues of cameras and other electronic media in the courtroom. Application of these guidelines will help this court and the trial courts better navigate this debated area of trial procedure.

While the concurrence disagrees with the exercise of our authority in recommending guidelines for trial courts to follow, these guidelines will allow us to assess the trial court experience with the changed presumption before a new superior court rule is adopted. *See, e.g., Hopps v. State Board of Parole*, 127 N.H. 133, 140 (1985). Because today's decision does, however, invalidate Superior Court Rule 78, at least in part, we refer it to

the Advisory Committee on Rules to initiate the rule-making process for the adoption of a new rule not inconsistent with the policy of openness reaffirmed in this opinion.

*So ordered.*

BROCK, C.J., and DALIANIS, J., concurred; DUGGAN, J., concurred specially.

DUGGAN, J., concurring specially. The narrow issue before us is whether the superior court's order excluding electronic media from the courtroom during the plea and sentencing in this criminal case is a sustainable exercise of discretion. Unlike the majority, I would limit our holding to the facts of this case and hold that the judge's blanket policy of excluding the electronic media is inconsistent with Superior Court Rule 78(a). In addition, I would hold that the judge's alternative ruling based upon the exercise of his discretion is not sustainable. I disagree that we should exercise our supervisory authority to invalidate Rule 78(a), but agree that the Advisory Committee on Rules should consider amendments to Rule 78(a) and make recommendations to us for further action.

The underlying criminal case in this litigation involved the prosecution in Grafton County Superior Court of two Vermont teenagers, Robert Tulloch and James Parker, for the murder of two Dartmouth College professors in January 2001. Throughout the case, various media outlets sought permission from the superior court judge to broadcast, record, or photograph the courtroom proceedings. The judge, however, had instituted a policy in 1995 banning the use of all cameras and recording devices in the Grafton and Coos County courtrooms where he presided.

In May 2001, the petitioners sought electronic access to the pre-trial hearings and trial. In a written opinion, the judge denied those requests. The petitioners renewed their request on February 20, 2002, which was also denied. In late March, the petitioners filed a petition for a writ of certiorari in this court. We had not yet acted upon that petition when Robert Tulloch decided to change his plea to guilty. The judge scheduled a plea hearing for April 4, 2002.

On April 3, 2002, the petitioners filed an emergency motion in this court for access to the plea and sentencing hearing. That same day, we remanded the motion to the presiding judge for a recommendation on the motion. Later that day, the judge recommended denial of the motion, stating there were "no issues of law or fact which warrant reconsideration of the orders of May 3, 2001, and March 8, 2002." He noted that the State opposed the presence of the electronic media.

We disagreed with the recommendation and promptly granted the petitioners access to the remaining proceedings. Accordingly, we ordered the judge to allow media access with appropriate limits as set forth in Superior Court Rule 78. On April 4, 2002, the judge conducted the plea and sentencing hearing at which the petitioners were permitted to use audio and video devices in the courtroom.

In denying electronic access to the plea and sentencing hearing, the judge implemented his administrative policy of prohibiting electronic access pursuant to Superior Court Rule 78(a). I agree with the majority that this policy squarely conflicts with Rule 78(a). The court-promulgated guidelines under Rule 78(a) state, "The order of the Presiding Justice in approving or denying these activities within the courtroom involves a decision upon the law and discretion." SUPER. CT. R. 78(a). A blanket policy refusing to exercise any discretion is not an exercise of discretion and therefore is an unsustainable exercise of discretion. *See State v. Chaisson*, 123 N.H. 17, 29-30 (1983).

The judge did not, however, rely solely upon his policy in denying access but also based his rulings upon the discretion afforded him by Rule 78(a). In his May 3, 2001 order, the judge cited several reasons for excluding the electronic media. The order stated that there were inadequate court facilities to protect the jurors from "media harassment" and noted the expense of sequestration to avoid such harassment. It also expressed concern that the presence of photographers and video camera operators in a small courtroom would distract jurors from the testimony. The order stated that there was a risk that broadcasting testimony might affect the potential juror pool and cause the dissemination of confidential lawyer-client conversations. The order acknowledged that allowing electronic media access did not create a *per se* violation of a defendant's rights, but concluded that "any distraction on the part of the jurors harms the defendant."

In his March 8, 2002 order, the judge emphasized that he was not denying all media access to the proceedings, but only electronic access. The order noted that while there is a constitutional right to access, Rule 78(a) provides the discretion to limit access. The order stated that the petitioners had failed to "offer a guarantee that none of the trial's participants would be affected [by the broadcast]." The order ultimately concluded that "while the jury's performance in *State v. Smart* makes a persuasive case for a jury's ability to ignore the presence of cameras, the layout of the courtroom in the Grafton County superior court makes it impossible to completely obscure cameras from the view of the jury ... [and] petitioners cannot guarantee that some jurors will not be affected by the presence of cameras."

The judge's exercise of discretion is unsustainable for three reasons. First, in his orders the judge never considered whether there were reasonable alternatives that might allow access by the electronic media and accommodate the other interests involved. It is well settled that before deciding to completely exclude the press from a court proceeding, a judge must consider reasonable alternatives. *Cf. State v. Guajardo*, 135 N.H. 401, 405 (1992). Indeed, the court-promulgated guidelines that accompany Rule 78(a) suggest a number of limitations on electronic access that can deal with problems such as the risk of overhearing attorney-client conversations. SUPER. CT. R. 78(a). Here, while the judge did not completely exclude the electronic media, he made no reference to any of the guidelines or explained why those procedures would be inadequate in this case. *See, e.g., State v. Smart*, 136 N.H. 639, 653-57, *cert. denied*, 510 U.S. 917 (1993); *State v. Stewart*, 116 N.H. 585, 587 (1976) (detailing adequate procedures).

Second, the judge imposed an impossible burden of proof upon the petitioners by requiring them to "guarantee" that neither the trial participants nor the jury would be affected by the cameras. This burden is inconsistent with the general rule that "[a]n absolute constitutional ban on broadcast coverage of trials cannot be justified simply because there is a danger that, in some cases, prejudicial broadcast accounts of pretrial and trial events may impair the ability of jurors to decide the guilt or innocence uninfluenced by extraneous matter." *Chandler v. Florida*, 449 U.S. 560, 574-75 (1981).

Third, the judge's March 2002 order and April 2002 recommendation to this court fail to take into account the changed nature of the proceedings in the *Tulloch* case. The judge did not consider that the risk of prejudice to the defendant during pre-trial hearings and the trial might not apply equally to the plea and sentencing hearing. For these three reasons, the judge's exercise of discretion under Rule 78(a) is not sustainable on the facts of this case.

The petitioners urge us to go further in this case and hold that there is a presumption in favor of electronic media access to all courtroom proceedings in New Hampshire. They ask us to re-examine Rule 78(a) and, in effect, hold that it should no longer be followed.

For many years, photographic, radio and television coverage in the courtroom was presumptively prohibited. *See Chandler*, 449 U.S. at 562-63. Indeed, for years the leading cases on television and press access to the courtroom were *Estes v. Texas*, 381 U.S. 532 (1965), and *Sheppard v. Maxwell*, 384 U.S. 333 (1966). In *Estes*, where "the courtroom was a mass of wires, television cameras, microphones and photographers," the court stated that "television . . . can strip the accused of a fair trial" and reversed

the conviction. *Estes*, 381 U.S. at 550, 552. In *Sheppard*, where "bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom hounding most of the participants in the trial," the court held that Sheppard had been deprived of a fair trial. *Sheppard*, 384 U.S. at 355.

The issue of electronic media access was subsequently studied by the American Bar Association and the Conference of State Chief Justices. *See Chandler*, 449 U.S. at 563-64. In 1978, the Chief Justices urged States to promulgate standards and guidelines regulating radio, television and photographic coverage of court proceedings. *Id.* at 564. This led to the adoption of Rule 78(a) in New Hampshire and similar rules in five other States. *Id.*

Since then, States have taken a variety of approaches to the use of television in the courtroom. According to a study submitted by the petitioners from the National Center for State Courts, a minority of States continue to prohibit television cameras in the trial court. MISS. C.J.C.C. 3 A(7) (1999); UTAH C.J.A. R. 4-401 (2002). Some States presumptively allow cameras in the courtroom. MASS. S.J.C. R. 1:19 (2002); IOWA C.J.C.C. 3 A(7) (2002); FLA. R.J.A. R. 2.170 (2002). Others require the consent of the parties. ARIZ. C.A.C.R., A.O. N. 6 (1987). Most States, however, leave the decision to the discretion of the trial judge. CAL. R.C. R. 980 (2002); TENN. S.C. R. 30 (1999).

The experiences of other States and more recent studies provide a starting point for a re-examination of Rule 78(a). The hostility towards television and assumptions concerning its impact may no longer be valid. Thus, we should review the guidelines, standards and procedures currently in place.

The appropriate process for re-examining Rule 78(a) is set forth in Supreme Court Rule 51, Rule-Making Procedures. That process "appl[ies] to all amendments or additions to . . . rules adopted or approved by the court . . . ." SUP. CT. R. 51 A (1)(b). Rule 51 requires the Advisory Committee on Rules to hold public hearings and invite comments on proposed rule changes. *Id.*

With respect to access to courtroom proceedings by the electronic media, the Advisory Committee will have to consider a number of difficult issues such as: (1) whether there should be a presumption allowing television cameras in the courtroom; (2) what standards should guide the trial judge's decision; (3) whether the same rule should apply to civil and criminal trials; (4) what weight should be given to an objection by one party, a witness, or the parent of a child witness; (5) what distinction should be made between jury trials and other proceedings; (6) whether the same access is required in all the courts of our State; (7) whether a judge

must hold an evidentiary hearing on a request for access by the electronic media; (8) what findings a court must make in granting or denying access; and (9) what appellate review is available.

Hearings regarding Rule 78(a) will provide an opportunity for interested constituencies to provide their views and to submit information that would be useful in determining what amendments, if any, are appropriate. While the parties in this case have provided helpful information, others interested in the issue are not before this court and should have the opportunity to participate in the rule-making process. At the conclusion of the process, the Advisory Committee on Rules will be able to make appropriate recommendations to this court.