905 So.2d 1196 (2005)
Re WLBT, INC., d/b/a WLBT-TV.
No. 2004-M-02239-SCT.
Supreme Court of Mississippi.
January 20, 2005.
*1197 Leonard D. Van Slyke, Jr., Jackson, attorney for appellant.
EN BANC.
WALLER, Presiding Justice, for the Court.
¶ 1. This matter comes to us from the Circuit Court of Madison County on the circuit court's denial of a request to allow television coverage of trial proceedings. Effective April 17, 2003, this Court adopted the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings "MREPC", bringing Mississippi in accord with those states which have elected to allow coverage of court proceedings by the use of still cameras, television, and other electronic technology.
¶ 2. David H. Richardson entered a guilty plea to the charge of conspiracy, and a sentencing hearing was scheduled for December 1, 2004. The petitioner here, WLBT-TV, timely notified the circuit court of its intention to cover the sentencing proceedings with television cameras as provided for in MREPC 5, and was notified by the court administrator that the request was denied.[1] WLBT then sought *1198 relief in this Court, and the matter was remanded with directions to the circuit court, Special Judge Marcus Gordon presiding, to enter an order regarding the request and, if it was denied, to state his reasons for doing so. Thereafter, the request was formally denied by opinion and order of the circuit court. WLBT then filed its petition for an emergency writ of mandamus to compel the circuit court to allow such televised coverage. This Court finds that the circuit court erred in denying WLBT's request, and, due to time constraints, we, on November 29, 2004, issued an order to this effect with opinions to follow.
¶ 3. After the first petition was remanded, a hearing was held at which WLBT, the district attorney, and attorneys for Richardson and Don A. McGraw, a co-defendant, were heard. In giving his reason for denying the coverage, the circuit judge stated his denial was based solely on his concern for the impact that television coverage of the sentencing proceedings may have on the right to a fair trial of James Butler, a defendant in a companion case, also charged with conspiracy. He found that Butler's right to a fair trial might be negatively affected by television coverage of statements made in the sentencing hearing regarding that defendant's guilt and details associating him with the conspiracy. The judge stated expressly that he had no concern that the coverage would adversely impact the dignity of the proceedings or offend decorum.
¶ 4. The paramount concern must, of course, be assuring fair trials for the parties. Nevertheless, the right of openness in judicial proceedings is also a fundamental right shared by the accused and the public. Gannett River States Publ'g Co. v. Hand, 571 So.2d 941, 942 (Miss. 1990) (citing Press-Enterprise Co. v. Superior Court (Press-Enterprise II), 478 U.S. 1, 7, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986)). Most often, that concern is raised, as it was here, on motion of press representatives, who have standing to contest court orders restricting public access to legal proceedings. Hand, 571 So.2d at 944 (holding that "representatives of the news media have the standing to contest a court order restricting public access to legal proceedings.")
¶ 5. In Hand, we addressed circumstances under which a court may close proceedings to protect the rights of the accused, holding that prior to closure, a hearing must be held, and that: at such a hearing a party seeking closure of the proceedings must "advance an overriding interest that is likely to be prejudiced; the closure order must be no broader than necessary to protect that interest; the trial court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure." Id. at 945.
¶ 6. In the present case, we do not face an order closing the proceedings, but rather one which restricts the methods and technology used, i.e. television cameras. There is neither a constitutional *1199 prohibition against nor a constitutional presumption in favor of allowing cameras in the courtroom. Chandler v. Florida, 449 U.S. 560, 580-81, 101 S.Ct. 802, 812-13, 66 L.Ed.2d 740 (1981); In re WMUR Cahnnel 9, 148 N.H. 644, 813 A.2d 455, 458 (2002); see generally Nixon v. Warner Communications, Inc. 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978). Still, prohibiting cameras does restrict the ability of the public to access the proceedings, and, as we said in Hand regarding the closing of proceedings, the complete exclusion of cameras should be resorted to only after less restrictive measures have been considered and found to be inadequate. Such is the dominate note of our rules.
¶ 7. MREPC 3 declares that electronic media coverage of judicial proceedings "shall be allowed in the appellate and trial courts of record in this state, subject to the conditions [of this rule.]" Having established the policy that electronic media coverage is favored, the rules put limits on the presiding judge's management of the use of the technology:
All electronic coverage is subject at all time to the authority of the presiding justice or judge to (i) control the conduct of the proceedings, (ii) ensure decorum and prevent distraction, and (iii) ensure fair administration of justice in the pending case. The rights of the parties to a fair adjudication are recognized as paramount. It is the responsibility of the media to so arrange and operate equipment in order to comply with these rules.
MREPC 3(a). MREPC 4 also places limitations on the use of the technology to prevent disruption, to protect jurors, and to avoid audio recording of off-the-record conversations and coverage of in-chambers proceedings. It is within these limits that the presiding judge's discretion and courtroom management must be exercised. It is generally better for the courts to limit or terminate coverage as needed than to exclude camera and television coverage altogether. MREPC 3 speaks of ensuring fair administration of justice and protecting the rights of parties and witnesses. These words envision real and substantial rights that are at risk. The learned circuit judge, while expressing concern that things covered in the sentencing hearing "may" impact the companion case  not that there was a probability that such would be the case  stated no specific prejudice. The proper standard for restricting press coverage is that there is a "substantial probability" that the accused will be deprived of a fair trial. In Press-Enterprise II, the Supreme Court rejected the lesser standard of "reasonable likelihood" applied by the California Supreme Court and went on to point out that "[t]he First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right." Press-Enterprise II, 478 U.S. at 14, 106 S.Ct. at 2743. The decision to restrict press access, whether by closing proceedings or by eliminating the use of the tools of the trade must be supported by specific, on the record findings of fact which show in what manner the coverage will cause a party to lose the right to a fair trial. See Hand, 571 So.2d at 944. Butler, the defendant in the related case, is not, in the words of MREPC 3, a party "in the pending case." The judge did not indicate that Butler's trial is imminent, a circumstance which could be a factor in limiting or restricting coverage if the trial of that case was to take place shortly after the sentencing hearing. Butler sought no opportunity to intervene and raised no objection to having cameras in the courtroom.
*1200 ¶ 8. Although each case must be judged on its own merits and the privilege of using electronic technology in the courts is not absolute, in the present case the circuit judge failed to articulate sufficient reasons to deny television coverage by WLBT-TV. The petition of WLBT-TV is granted to the extent that the circuit court's order denying television coverage is set aside. WLBT shall be allowed to provide television coverage of the proceedings in accordance with the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings.
¶ 9. PETITION GRANTED AND CASE REMANDED.
SMITH, C.J., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., AND WALLER, P.J.; COBB, P.J., AND RANDOLPH, J., JOIN IN PART. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY EASLEY AND RANDOLPH, JJ. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COBB, P.J. AND RANDOLPH, J. DIAZ, J., NOT PARTICIPATING.
DICKINSON, Justice, Concurring.
¶ 10. I fully concur with the majority. I write only because the dissent raised important issues, including the viability of our current rules regarding the use of cameras in our courtrooms, and although I cannot join the dissent, I do agree that additional discussion is warranted.
¶ 11. The phrase  "freedom of the press"  is deceptive. The prepositional phrase contained therein might lead one to conclude that this portion of the First Amendment was intended to benefit only the printers and publishers of news and information. I am persuaded, however, that our Founders were far more concerned with protecting the right of the citizenry to be informed, than with benefitting the newspapers. Thomas Jefferson said, "Our liberty depends on the freedom of the press, and that cannot be limited without being lost." (Letter from Thomas Jefferson to James Currie (January 28, 1786) in 9 Papers of Thomas Jefferson 239 (Julian P. Boyd ed.1954)). In his concurring opinion in New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), Justice Hugo L. Black summed it up this way:
In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. The press was to serve the governed, not the governors. The Government's power to censor the press was abolished so that the press would remain forever free to censure the Government. The press was protected so that it could bare the secrets of government and inform the people.
Id. at 717, 91 S.Ct. 2140.
¶ 12. The case before this Court today requires us to evaluate the reasonableness of the trial court's decision to deny WLBT's request to film a former public official who was scheduled to admit that he was guilty of criminal conduct. It is, I think, important to note that we are not concerned here with a request to attend or record proceedings which were closed to the public. Were that the issue before us, a very different analysis would be required. But here, WLBT requested to film proceedings scheduled to take place in open court. Thus, we cannot affirm the trial court unless some reasonable basis exists for preventing WLBT's cameras *1201 from going where the newspaper's reporters are allowed.
¶ 13. The trial court's reason for exclusion is recited verbatim in the dissent, and I shall not repeat it. In essence, the trial court predicted that, "in all probabilities," former Madison County supervisor Richardson and his co-defendant, McGraw, would be "detailing the conspiracy agreement." These details, according to the trial court, might very well compromise the investigation and prosecution of the alleged co-conspirator, James Butler.
¶ 14. It is difficult at first blush to find fault with this reasoning, so far as it goes. However, to declare it a reasonable basis for compromising the freedom of the press, I think we are required by good conscience, fidelity to the Constitution, and our own rules, to carefully analyze not only the reason advanced by the trial court, but also the factual basis accepted by the trial court which led to its conclusion.
¶ 15. The trial court was concerned that Richardson might say something compromising the prosecution of Butler. Suppose that turned out to be the case. In other words, suppose Richardson were to provide compromising testimony in open court before the public, reporters from the newspapers, and reporters from the television stations (absent their cameras). We must then conclude (as apparently the trial court concluded) that Butler's prosecution would be less compromised with pictures of Richardson outside the courtroom, and with newspaper articles and television news reports which paraphrased Richardson's testimony, rather than reported it verbatim. Stated another way, the trial court's decision implies that it would be reasonable to allow Richardson and McGraw to provide public testimony, which potentially could damage the prosecution of Butler (with newspaper and television reporters in attendance), so long as WLBT doesn't film it. I cannot follow this reasoning, let alone agree with it. It seems to me quite difficult to imagine the content of possible testimony which would be less compromising if paraphrased rather than reported verbatim, and which would justify excluding part, but not all, of the press coverage.
¶ 16. If, as the trial court feared, the potential testimony was a legitimate threat to the prosecution of Butler, then the trial court had the option of requiring the testimony to be taken in a closed proceeding, while allowing all other aspects of the plea to take place in open court.[2]
¶ 17. The real issue in this case is what burden this Court is willing to impose on those who would compromise the right of the citizenry to witness the "secrets of government" which, in this case, include not only the conduct of a former public official, but also the workings of our judicial system. It cannot be doubted that Richardson's criminal conduct, the recommendation of the district attorney for sentencing, and the sentence imposed by the trial court, are all matters of legitimate public interest and concern. I therefore am convinced that the burden should be heavy. But at its absolute minimum, it has not been met here.
¶ 18. Finally, I do not agree with the dissent's conclusion that our current rule, as interpreted and applied by the majority, diminishes the importance of the trial court's review of the request for camera coverage. As this Court held in Bailey, all members of the public (including the press) may be excluded from the courtroom *1202 under appropriate circumstances. And there may be cases where the public and press are not excluded, but a trial court concludes that television cameras should be excluded because of the detrimental or prejudicial effect they would impose on the proceedings.[3] Under all such circumstances, it is the trial judge who must evaluate the request and place on the record its findings of fact and conclusions of law which justify exclusion. In such cases, I firmly believe (as does the dissent) that the trial court's discretion should be respected. The dissent also concludes, and I agree, that it would be difficult to draw a bright line test to be applied to a trial judge's discretion when applying the MREPC. But the absence of a bright line test does not suggest to me that a trial judge's discretion should be unfettered. And where, as here, no reasonable basis or justification for exclusion has been demonstrated, we should follow our own rules and reject the trial judge's conclusion. To do otherwise would, in my judgment, compromise the right of governed to be informed of the "secrets of government." That right can be protected only so long as we respect and carefully protect a free press.
¶ 19. For these reasons, I believe our rule regarding television coverage of judicial proceedings is a good one, and I am in agreement with the reasoning and conclusion of the majority.
SMITH, C.J., AND WALLER, P.J., JOIN THIS OPINION. COBB, P.J., AND RANDOLPH, J., JOIN THIS OPINION IN PART.
COBB, Presiding Justice, Dissenting.
¶ 20. As a result of this first case decided under our new Rules for Electronic and Photographic Coverage of Judicial Proceedings (MREPC), we have learned many lessons which will enable us to improve the process whereby we apply the Rules. That is good for the public, bench, bar, litigants and the media. In my view, however, the majority reached the wrong result, under the specific facts and circumstances of this particular case. I also strongly disagree with the majority's comparison to and application of the principles set forth in Gannett River States Publ'g Co. v. Hand, 571 So.2d 941 (Miss.1990). Therefore, I respectfully dissent. To the extent that Justice Easley, in his separate opinion, has touched on some of the concerns which I address, I also join him.
¶ 21. A. Application of Hand. Judge Gordon's decision to deny WLBT's request to televise the David Richardson sentencing hearing, should not be compared to the complete closure of court proceedings to the public, which was the issue in Hand. While it is appropriate for this Court to consider the reasoning and guidelines set forth in Hand, it is inappropriate to adopt the same in the context of simply denying television coverage of a sentencing hearing. Neither Hand nor the U.S. Supreme Court cases cited by the majority are applicable here. In Hand, this Court simply held that the closure order should not have been entered without public notice and an evidentiary hearing.
¶ 22. Although the majority acknowledges the differences, and correctly states that "[t]here is neither a constitutional prohibition against nor a constitutional presumption in favor of allowing cameras in the courtroom" citing Chandler v. Florida, 449 U.S. 560, 580-81, 101 S.Ct. 802, 812-13, 66 L.Ed.2d 740 (1981) and In re *1203 WMUR Channel 9, 148 N.H. 644, 813 A.2d 455, 458 (2002), it then goes on to state "[s]till, totally prohibiting cameras does restrict the ability of the public to access the proceedings." Although it may restrict the convenience of the public being able to "access the proceedings" in the comfort of its homes, that is certainly not the same. In my view, that is an important distinction, which the majority has blurred.
¶ 23. B. Authority of Presiding Judge. In my view, the majority has gone too far in its limitations of the discretion given to the presiding judge by MREPC 3(a), which provides:
All electronic coverage is subject at all time to the authority of the presiding justice or judge to (i) control the conduct of the proceedings, (ii) ensure decorum and prevent distraction, and (iii) ensure fair administration of justice in the pending case. It is the responsibility of the media to so arrange and operate equipment in order to comply with these rules.[4]
¶ 24. When notified of WLBT's petition to this Court for a stay of Richardson's sentencing hearing and emergency writ of mandamus directing that electronic coverage of the hearing be allowed, Judge Gordon properly requested time in which to respond and ultimately properly held a hearing to allow all parties an opportunity to be heard.
¶ 25. Judge Gordon's primary concern was one not even directly addressed by our MREPC,[5] but which highlights the need to grant the trial judge broader discretion than that envisioned by the majority. After the evidentiary hearing on November 22, 2004, Judge Gordon entered an excellent, detailed, well-reasoned opinion touching on several issues regarding media coverage of judicial proceedings, and his explanation for his denial in this situation is far better than any summary which I might make:
It was of considerable concern to the Court that subsequent to the indictment of Richardson and McGraw and the announcement that they intended to enter a plea that Defendant Butler was indicted for said crimes and that he was charged with conspiracy with McGraw and Richardson in the land transaction. The crime for which the three defendants were charged is conspiracy which is a crime where two or more persons agree to commit a crime, and this Court being aware that in the sentencing hearing that there would in all probabilities be statements regarding the guilt of Butler and his involvement in the conspiracy with Richardson and McGraw. The Court is familiar with the case of Moody v. State which held that plea bargaining agreements must be upheld and not denied by the Court upon showing by the Defendant that he had performed in reliance of the offer of plea bargaining. Therefore, in this case it appeared to the Court that defendants Richardson and McGraw would be detailing the conspiracy agreement that involved Butler with this testimony then to be televised to prospective jurors of *1204 Madison County and to cause an injustice to a case that is presently pending in the Circuit Court of Madison County.
¶ 26. Judge Gordon closed his order by saying that "the Court made its best interpretative ruling and ruled in an honest attempt to protect all parties involved in this case and in the Butler case that is presently pending." In my view, this was sufficient to warrant exclusion of WLBT's cameras from the sentencing hearing. The impact upon the rights of the parties in the present case is an easier question. The impact upon the rights of Butler and possibly others in the related pending case is impossible to know. We should not second-guess the prudent and reasonable exercise of the authority and discretion of this seasoned trial judge.
¶ 27. It is difficult to draw a bright line when it comes to determining what is proper discretion and authority of the trial judge with regard to the MREPC. It is my view that no member of this Court would say that it should be totally unfettered; and likewise no member of this Court would say that it should be totally taken away. It appears to me, however, that the majority has decided to draw the line far too near the latter, almost to the point where it appears that we give only "lip service" to the authority of the presiding justice or judge.
¶ 28. For these reasons, I would deny the petition here.
EASLEY AND RANDOLPH, JJ., JOIN THIS OPINION IN PART.
EASLEY, Justice, Dissenting.
¶ 29. While I do not oppose the use of cameras and electronic coverage in our courtrooms, I am concerned about the disruption and interference that they may bring about in some cases. This is such a case. The control of the courtroom should be in the hands of the presiding trial judge. This is the paramount mechanism we have for insuring both the protection and enforcement of individual rights. I agree with much of the majority's discussion of our rules and the applicable case law. However, I must stress the importance of respecting and honoring the trial judge's discretion in these matters. The presiding trial judge is entrusted with maintaining decorum in his or her courtroom. The trial judge is in the best position to recognize the impact or disruption to the proceedings in his or her courtroom.
¶ 30. On appeal, we are removed from the proceedings, and therefore, may not be in the best position to make this decision. However, this should not be seen as an absolute. I believe that the trial judge must make a record of the reasons to support the denial of cameras or electronic coverage in his or her courtroom. Likewise, I believe that the boundaries of coverage, if granted, should also be specified to avoid later problems.
¶ 31. Here, Judge Gordon conducted a hearing on the use of cameras. Concerns were raised with Richardson's guilty plea and the details of the matter being broadcasted. Judge Gordon found that television coverage of Richardson's sentencing could negatively impact the ability of James Butler, a defendant in a companion case, to receive a fair trial. Butler is charged with conspiracy. Judge Gordon held a hearing and made a finding in the record. The decision was based upon the concern for protecting Butler's right to receive a fair trial after the broadcast of the proceedings. The decision was based upon adequate findings to support the ruling by an experienced and learned trial judge.
¶ 32. Again, I am not opposed to the use of cameras in the courtroom, but I am concerned about having safeguards in *1205 place to protect the rights of the people that appear in our courts and not just the need for creating public entertainment. The paramount safeguard we have in place is the trial judge, and this State is blessed with excellent trial judges. Therefore, I emphasize the need to respect the discretion of the presiding trial judge and the need for a record to support the denial of cameras or electronic coverage and boundaries established if granted.
¶ 33. For these reasons, I would deny the petition.
COBB, P.J., AND RANDOLPH, JOIN IN PART.
NOTES
[1] In the hearing on media coverage, there was discussion of the difference between MREPC 5, requiring that media representatives notify the clerk and court administrator of their intention to use electronic coverage forty-eight hours prior to trial, and MREPC 7 which requires parties to file objections to such coverage up to fifteen days prior to trial. In this discussion, there was apparent confusion as to the purpose of the two rules. MREPC 7 requires parties to formally object to all use of camera and television coverage. Should parties believe media coverage would be prejudicial or otherwise objectionable, their objection is to be filed sufficiently in advance of the proceedings to allow a response and hearing. MREPC 5 requires notice of the media's intention to record or broadcast forty-eight hours before the proceedings begin, so that administrative coordination may be had prior to the proceedings. The "media notice" is not for leave or permission to record or broadcast because that right is presumed unless there are objections or order to the contrary.
[2] For an excellent discussion of a trial court's authority to close the courtroom under appropriate circumstances, see Bailey v. State, 729 So.2d 1255, 1259-61 (Miss.1999). See also Gannett River States Publ'g Co. v. Hand, 571 So.2d 941, 945 (Miss. 1990).
[3] For instance, where the physical limitations of the courtroom facility suggest that the filming of jurors would be unavoidable.
[4] In hindsight, this portion of the rule seems to indicate that more consideration was given to the impact which subsections (i) and (ii) might have on the courts, than to the impact which subsection (iii) might have on the parties, the litigants and the judge.
[5] The MREPC 3(a) only mentions "fair administration of justice in the pending case" but does not contain any protection which might be needed to ensure such fairness in a related case. The opening sentences in MREPC, which mention the protection of "the rights of the parties", should not be read so narrowly as to exclude consideration of the right to fair trials to other closely related criminal defendants.